IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:23CR462-1 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| MALACHI BERRY, | ) | <u>GOVERNMENT'S SENTENCING</u> |
| | ) | <u>MEMORANDUM</u> |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, Carol M. Skutnik, Acting United States Attorney, and Kelly L. Galvin, Assistant United States Attorney, and hereby provides the following in support of its sentencing memorandum. The Government respectfully requests this Court sentence within the range proposed by the written plea agreement, that being a Total Adjusted Offense Level after Acceptance of Responsibility of 27, using a Criminal History Category II, producing an advisory Guideline range of 78-97 months imprisonment.

I.  **FACTUAL BASIS AND PROCEDURAL HISTORY**

On August 23, 2023, Malachi Berry was charged in a 2 Count indictment as applied to him, for Conspiring to Possess a Machinegun (Count 1), in violation of 18 U.S.C. §§ 371 and 922(o), and Conspiring to Engage in the Business of Dealing Firearms without a License (Count 2), in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A). (R. 1: Indictment, PageID 1). Berry was arrested on the indictment on August 30, 2023. (R. 135: Presentence Report *SEALED* PageID 772). Following a detention hearing, he was ordered released on September 19, 2023, on pretrial supervision. (*Id.*).

On June 27, 2024, Berry entered guilty pleas to both counts of the indictment pursuant to a written plea agreement. (See R. 118: Plea Agreement, PageID 540). This Court issued a warrant

for Berry for failing to comply with pretrial supervision requirements and failing to appear for his sentencing date on November 7, 2024. Berry was arrested the same day. (Minutes - Non-Document).

The United States Probation and Pretrial Office issued a Final Presentence Report (PSR) on September 4, 2024. (R. 135: Presentence Report *SEALED* PageID 771). As the Government generally agrees with the offense conduct described in the Presentence Report, it will not describe the offense conduct herein. (*Id.*, ¶¶ 1-23, PageID 772-777).[1]

The calculations differ from those agreed to by the parties in the written plea agreement. (*Id.*, ¶ 79 , PageID 788). The PSR concludes the total offense level after acceptance is 35, Criminal History Category II, which produces an advisory range of 188-235 months. (*Id.*, ¶ 77, PageID 788). The written plea agreement calculated the total offense level after acceptance as 27, Criminal History Category II, which produces an advisory range of 78-97 months. (*Id.*, ¶ 79, PageID 788).

## II. LAW AND ARGUMENT

The Government respectfully requests this Court adopt the calculations contained in the written plea agreement and sentence Berry within the advisory Guideline range of 78-97 months. The Government further recommends this Court consider imposing consecutive sentences, to achieve the sentence in accordance with § 5G1.2(d), which states, "If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law."

---

[1] The Government will separately address offense conduct in Paragraphs 12, 17, and 22 in the Legal Argument Section of this Memorandum as they relate to Section 2K2.1(b) enhancements not applied in the written plea agreement.

In tailoring all plea offers to the seven defendants within the conspiracy, the Government was mindful of the § 3553(a) factors, particularly as they related to offense conduct, age, criminal history, and sentencing disparities. Berry will be the last defendant to be sentenced. Other defendants have been sentenced as follows:

| | |
|---|---|
| Terrez Wilson | **26 months** for Possession of Machinegun |
| Darvell Jackson | **168 months** for Possession of Machinegun, Engaged in Business of Dealing Firearms w/o License, and Possession of Obliterated Firearm |
| Maurice Hardman | **33 months** for Possession of Machinegun, Engaged in Business of Dealing Firearms w/o License |
| Brandon Kimbrough | **29 months** for Felon in Possession |
| Steven Armstrong | **26 months** for Possession of Machinegun |
| Nimar Linder | **70 months** for Felon in Possession and Engaged in Business of Dealing Firearms w/o License |

The Government could have in certain cases, but did not, attempt to hold defendants accountable for offense conduct committed by a co-conspirator, even though reasonably foreseeable. Given that multiple defendants were sometimes present for a firearm transaction and appeared to work together at times, that approach while less complicated had the propensity to produce significant sentencing disparities. Instead, the Government chose to hold defendants accountable for individual conduct, tailoring plea agreements to allow less culpable defendants to be sentenced accordingly. Even Berry, at the top of the conspiracy, was offered to plead to less conduct than he committed given the disparity created by his potential sentencing range applying all enhancements. To be clear, Berry set in motion a conspiracy to transfer firearms that were used in crimes, were stolen or obliterated, or were illegal, simply to make money without any regard for how the firearms would be used in the future, or how they were used in the past. Most importantly, he and he alone chose who met the undercover agents and sold firearms. The prolific amount of firearms and circumstances in which they were sold demonstrates how firearms are so easily and carelessly transferred in the illegal street market.

Given the sentences of other defendants in the conspiracy, the Government proposes that Berry's sentence should be higher than any other defendants with exception of Darvell Jackson, whose offense conduct could not reasonably be considered in comparison to any others.

A. <u>Non-Application of Section 2K2.1(b) Enhancements</u>.

The parties acknowledge that the PSR included several enhancements that were not applied in the written agreement as stated in a footnote to Paragraph 16. (R. 118: Plea Agreement, ¶ 16, PageID 545). "Berry personally sold or received a brokerage fee for the sale of 13 firearms. The parties considered but did not apply a 4-level enhancement under § 2K2.1(b)(6)(B) for use in connection with another felony offense.[2] The parties considered but did not apply a 2-level enhancement under § 2K2.1(b)(4)(A) for the stolen firearms sold by Darvell Jackson on June 12 and 13, 2023. The parties considered but did not apply a 4-level enhancement under § 2K2.1(b)(4)(B) for the obliterated firearm sold by Jackson on June 22, 2023. The parties considered but did not apply a 2-level enhancement under § 2K2.1(b)(4)(A) for the stolen firearm sold by Nimar Linder on August 9, 2023." (*Id.*).[3]

The Government carefully considered the application of these enhancements as they related to Berry and determined that holding the respective defendant accountable for those enhancements was proper. Thus, the Government considered, but agreed not to seek the application of those enhancements. For those reasons, the Government does not seek to enforce application of the

---

[2] The Plea Agreement incorrectly identified the enhancement under § 2K2.1(b)(6)(B) and intended to reference § 2K2.1(b)(6)(A), possessed or transferred any firearm with knowledge, intent, or reason to believe that it would be transported out of the United States. (R. 118: Plea Agreement, ¶ 16, PageID 545).

[3] Jackson did not plea guilty pursuant to a written plea agreement, but the Government argued for the application of those enhancements. (See R. 176: Govt. Sentencing Memo, PageID 1304). Linder pleaded guilty pursuant to a written plea agreement including the application of § 2K2.1(b)(4)(B), a 4-level enhancement which usurped and encompassed the 2-level enhancement for stolen firearm. (See R. 113: Linder Plea Agreement, PageID 511).

4

enhancements calculated in Paragraphs 31 and 33 of the PSR. (R. 135: PSR *SEALED* ¶¶ 31, 33, PageID 779).

1. Non-Application of Sections 2K2.1(b)(6)(A) and 2K2.1(b)(4)(B)

Section 2K2.1(b)(6)(A) states that if the defendant used or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be transported out of the United States, increase by 4 levels. Berry objects to Paragraph 33 of the Presentence Report writer's application of the § 2K2.1(b)(6)(A) four-level enhancement for transferring firearms with knowledge they would be transported out of the United States, alleging the undercover agent's statement that they sold firearms in Canada is a "lie" and therefore cannot be applied. (R. 135: PSR *SEALED* PageID 796). While the Government disagrees with the Defendant's position as to why it does not apply, it nonetheless agreed in its written plea agreement not to apply the enhancements.

The PSR correctly identifies that on June 22, 2023, Jackson sold two pistols to agents for $1,300, and that one pistol had an obliterated serial number. (R. 135: Presentence Report *SEALED* ¶ 15, PageID 776). Although Berry brokered the transaction, he was not physically present for it. As agents had not previously requested Berry sell them obliterated firearms and he never saw the firearm, the Government in fairness determined the enhancement should be applied to Jackson, but not Berry, and negotiated as such.

B. Consecutive Sentences.

Berry entered guilty pleas to conspiracy to possess machineguns, in violation of 18 U.S.C. §§ 371 and 922(o) and to engaging in the business of dealing firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A). The statutory maximum term of imprisonment is 5 years for both offenses. The calculated advisory Guideline range with acceptance of responsibility

5

contemplated by the plea agreement is 78-97 months, well above the statutory maximum. (R. 135: PSR *SEALED* ¶ 79, PageID 788). This Court can and should impose consecutive sentences to the extent required to achieve a sentence within that range.

While Section 3D1.2(d) requires offenses to be grouped, that does not bind the Court to impose concurrent sentences. Section 5G1.2(d) instructs the Court that "[I]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law." See *United States v. Chase*, 296 F.3d 247, 251 (4th Cir. 2002).[4] The Presentence Report correctly grouped Counts One and Two under § 3D1.2(d) in calculating the offense level, but this Court may still consider whether individual counts of conviction can run consecutive to another.

Berry entered guilty pleas to possessing machineguns and engaging in the unlicensed dealing in firearms, which are wholly separate offenses. Machineguns are inherently illegal, whereas selling ordinary firearms such as pistols can be legal or illegal depending on the circumstances. His conduct involved the commission of separate and distinct offenses, and while both amounted to criminal conduct, clearly both offenses involved the worst forms of the offenses by not only selling firearms but recruiting others to do so. (R. 135: PSR *SEALED* ¶¶ 1-23, PageID 772-77).

The Sixth Circuit has upheld the imposition of consecutive firearm sentences, regardless of mandatory minimum sentences or grouping of counts, when the district court properly exercises

---

[4] The government appreciates *Chase* was decided before *United States v. Booker*, 543 U.S. 220 (2005), and that following *Booker* the Sentencing Guidelines are advisory.

its discretion after considering § 3553(a) factors. *United States v. Johnson*, 640 F.3d 195, 208 (6th Cir. 2011). Where the district court reviews the sentencing factors, the defendant's personal history and characteristics, the dangerous nature of the offense, the goals of imprisonment including promoting public safety and deterrence, and expresses its intent not to over-incarcerate, such that its reasons for imposing consecutive sentences were intertwined with its reasons for the overall length of sentence, the Court has properly used its discretion in imposing consecutive sentences for counts of carjacking, using a firearm during a crime of violence, and felon in possession. *United States v. Dial*, 694 F. App'x 368, 372-73 (6th Cir. 2017). *See also United States v. Lett*, 782 F. App'x 429 (6th Cir. 2019) (consecutive sentences for felon in possession and possession of stolen firearm properly imposed when district court explained in detail why it imposed sentence and thoroughly analyzed who defendant was, what he did, and why consecutive sentences were warranted to punish him, protect public from him, and deter others from committing similar crimes).

The Government will more fully explain the sentencing factors with its recommendation for where within the range during the sentencing hearing.

### III. CONCLUSION

The government respectfully requests this Court adopt the calculations contained in the written plea agreement and sentence within the advisory Guideline range of 78-97 months, by imposing consecutive sentences.

Respectfully submitted,

CAROL M. SKUTNIK
Acting United States Attorney

By: /s/ Kelly L. Galvin
Kelly L. Galvin (OH: 0062585)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3731
(216) 522-8355 (facsimile)
Kelly.L.Galvin@usdoj.gov